# Commonwealth *v.* William Weber, Appellant.

167     153|
212    ⁴296|

167     153|
215    ³225|

167     153
32 SC ⁴ 88|

167     153
35 SC ⁶391

167    153
37SC ³513

167    153
39SC²506
f40SC³129

*Murder—Comment of district attorney on failure of prisoner to call his wife as witness.*

On the trial of an indictment for murder, where it appears that the prisoner's wife was present at the killing, it is not improper for the district attorney to comment upon the fact that the prisoner failed to call his wife as a witness for the defense.

*Murder—Offer by commonwealth to call wife of prisoner—Evidence.*

It is no ground for reversing a judgment on a verdict of guilty of murder of the first degree, that the court below refused to strike from the record an offer by the commonwealth to place the wife of the prisoner on the stand as a witness for the prosecution, when it appears that the offer was objected to by the prisoner, and overruled by the court.

*Murder—Improper comment on evidence by district attorney—Review.*

The Supreme Court cannot consider an assignment of error alleging improper comment made by the district attorney upon the evidence at the trial of an indictment for murder, where no objection was made at the trial, and the only report of what the district attorney said is contained in the notes of a private stenographer of the counsel for the prisoner.

It seems that it is improper for the district attorney to attack the character of the prisoner, not from the evidence, but by inference from the fact that the prisoner had called no witnesses to testify to good character; but such an impropriety is not ground for reversal, where no objection is made to it at the trial.

*Murder—Jury—Challenges.*

On the trial of an indictment for murder where all the jurors present had been called and either sworn, challenged or stood aside, and eleven had been accepted, sworn and taken their seat in the box, it was not error to call the twelfth juror from those who had been stood aside, where it appears that the prisoner's peremptory challenges had not yet been exhausted.

On the trial of an indictment for murder, it appeared that twelve of the jurors of the panel were in the jury room deliberating on the verdict in another case. The remainder of the jurors of the panel had been called and either sworn, challenged, or stood aside. Eleven had been accepted and sworn. The prisoner's peremptory challenges had not been exhausted. *Held*, that it was within the discretion of the court to permit the twelfth juror to be called from those who had been stood aside, and to proceed with the trial without awaiting the return of the jurymen who were out.

*Murder—Producing prisoner handcuffed in presence of the grand jury.*

It is no ground for reversing a verdict of guilty on an indictment for murder that the prisoner was brought handcuffed into the court room in the presence of the grand jury.

*Evidence—Threats—Rebuttal—Order of testimony.*

On the trial of an indictment for murder, the prisoner when on the stand denied that he had made threats against the deceased.    After the testimony for the defendant had been closed, the person in whose presence the alleged threats had been made was called by the commonwealth to contradict the prisoner.    *Held,* that the admission of the testimony after defendant's case had closed was not such an abuse of the discretion of the trial judge over the order of introducing testimony, as to justify a reversal.    *Held, further,* that the evidence was also admissible at that stage of the trial to contradict the prisoner.

*Murder—Murder of the first degree—Evidence.*

A judgment on a verdict of guilty of murder of the first degree will be sustained where the evidence shows that the prisoner had made threats against the deceased, his father-in-law ; that subsequently he met his wife from whom he had been living apart, and his father-in-law, to divide amongst them some household furniture ; that prior to the meeting he bought a revolver and cartridges and loaded the revolver ; that at the meeting which was in a cellar, some words passed between the parties ; that the deceased started to leave the cellar, when the prisoner drew his revolver, aimed and snapped it at the deceased, again pulled the trigger shooting the deceased in the arm, and then fired it twice again, one of the shots piercing the brain of the deceased and the other his arm ; that the prisoner then snapped his revolver at his wife, and ran away.

Argued March 4, 1895.    Appeal, No. 320, Jan. T., 1895, by defendant, from judgment of C. P. Berks Co., June T., 1894, No. 261, on verdict of guilty of murder of the first degree. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Indictment for murder.    Before ENDLICH, J.

At the trial counsel for the defense entered the following protest to the impaneling of the jury.

" And now, to wit, September 12, 1894, the defendant protests and objects to the impaneling of a jury in the above prosecution, a full panel not being present to draw from."    To this the court replied : " I do not understand that the prisoner or the commonwealth is entitled to the full panel when the other jurors are engaged in another case."    (Exception.)    [10]

The panel having been exhausted, the jurors stood aside by the commonwealth were recalled as follows : Charles W. Hetrich, recalled :

Mr. Stevens : " I object to recalling any jurors until the defendant has the benefit of the full panel, there not being a full

panel of the jurors present, the remaining jurors being engaged elsewhere, and objection having been made when the prisoner was called for trial to going on with an incomplete panel."

The Court: " The objection is overruled; exception for defendant." [11]

Mr. Stevens: " Before the arraignment, I desire to offer two formal objections to quash the indictments, as follows: ' And now September 12, 1894, the defendant by his counsel, Stevens & Stevens, moves to quash the indictment in the above case, on the following grounds: First. The district attorney, on Monday, September 10, 1894, before the indictment was found, in the presence of the grand jury, called the attention of the court to this case, desiring said court to fix a day for the trial thereof. Second. The prisoner, before indictment found, was brought handcuffed into the court room in the full presence of the grand jury. The district attorney's attention being called to the first reason to quash, stated there was no application made such as is referred to in the said reason and that there was no discussion of the matter; that the court's attention was called to the existence of such a case and the court promptly intimated to the district attorney that nothing would be heard in the matter at that time." Motion overruled. [12]

George Snyder, a witness for the commonwealth was asked this question:

By Mr. Jacobs: " Q.—What is your first name? A.—George. Q.—You occupied the same cell with Weber? A.—Yes, sir. Q.—In the Berks county prison? A.—Yes, sir. Q.—Are you still in jail? A.—Yes, sir. Q.—Before he was released did you hear him say that when he would get out he would get square or get revenge on the old gray-headed son of a bitch? A.—No, sir, I didn't hear him say that; his wife was up to see him before Christmas and she said her father promised each of them a Christmas present, and she said he said if she lived with him she wouldn't get any, and three or four days afterwards he said, ' she can go if she wants to, but I will get square with the gray-headed son of a bitch.' Q.—He said he would get square with the gray-headed son of a bitch? A.—Yes, sir." [13]

(1.) In allowing private counsel for the commonwealth to comment on the failure of the defendant to call his wife as a witness, and overruling the objection made by defendant, as follows:

Mr. Jacobs: " Counsel for the defense having argued to the jury that there was but one witness testified against Weber, (and that was Miller) and that it was oath against oath, and that between the two he would believe the defendant, and the defendant having gone on the stand and testified in his own favor, counsel for the commonwealth now proposes to comment to the jury on the fact that defendant didn't put his wife on the stand."

Mr. Stevens: " Counsel for the defendant appearing, states that no argument was made to the jury except upon the evidence in the case and the facts as produced by the witnesses, and objects to the improper argument of the commonwealth's counsel to the jury, and asks for an exception if it is allowed— if not, that the jury be instructed to disregard it."

The Court: " The objection is overruled and bill sealed for defendant."

(2.) In allowing counsel for the commonwealth to offer to place the wife of the defendant on the stand as a witness for the prosecution, and in not striking said offer from the record, which is as follows: " Mr. Jacobs, counsel for the commonwealth, at this point offered to put the wife of the defendant on the stand if there was no objection made by the defendant, but to which the defendant's counsel objected, and the offer was rejected by the court."

(3.) In allowing private counsel for the commonwealth to argue matters of fact to the jury not produced in evidence, as follows: " A murder has been committed in our midst—a foul murder, an excuseless, a causeless murder—and I was asked to prosecute, asked by the old widow, asked by her children, asked by their kinsfolk and their neighbors ; and, after looking over the ground, I said, 'yes, I will prosecute this man, for it was a heartless murder and he stands without excuse.' I believe now, that the testimony is in, as I believed then, that I was right and the most causeless murder had been committed in our midst."

(4.) In allowing private counsel for the commonwealth to argue the following matters of fact to the jury not produced in evidence: " It is absolutely necessary for the safety of human life that he who sheds the blood of man by man shall his blood be shed. It is necessary for the protection of your wife, and

your babe; it is necessary for the protection of yourself, because nothing else will stop the cowardly arm of the assassin except the fear of the law."

(5.) In allowing private counsel for the commonwealth to argue to the jury the following matters of fact not produced in evidence: " Watch! He has taken that handkerchief from the right-hand pocket fifty times to-day, and I intend to get the handkerchief; that right hand next to me, the crippled hand next to me—that handkerchief, over and over, and it was always put in the right hand back; that is the 'linxer' they talked about."

(6.) In allowing private counsel for the commonwealth to argue to the jury that the defendant had not produced any evidence as to its character, as follows: " If Justice KLEMMER was on trial to-day for his life, he could bring you one thousand people, from the president of the.Reading Railroad down to the lowest bootblack that loafs around the depot, besides citizens by the hundred, to testify to his good character; and yet that man to-day under trial for his life has not a single dog to bark his praise—characterless, homeless and soulless, you have done this deed, and put your poor wretched self in the position you are.   God have mercy on your soul, for I pity you."

(7.) In allowing private counsel for the commonwealth to argue the following matters of fact to the jury not produced in evidence: " Then this fellow with the smell of the jail all over him, the disgrace of a felon all around him, he sneaks up the alley and says; 'I want my wife, I will get her, by God. The son of a ——, if he comes out I will do him up.'"

(8.) In allowing private counsel for the commonwealth to argue the following matters to the jury, not produced in evidence: " Then, gentlemen of the jury, the meanest and dirtiest part of him—he wanted that certificate, that piece of paper; he wanted that little parchment on which the preacher wrote the marriage ceremony which separated her from the general harlot and made her the wife of a man.   By the eternal, he wanted to rob her of that, even to show that her babe was illegitimately born!   I do not know of a man whose conduct strikes me as more villainous and abominable than his.   And if he had been let alone a little while longer he would have killed his wife, too."

(9.) In allowing private counsel for the commonwealth to comment on the following state of facts not in evidence: " And when he is convicted, he will make a confession before he goes to his God that what he said was false."

The evidence relating to the circumstances of the killing is stated in the opinion of the Supreme Court.

Verdict of guilty of murder of the first degree, on which judgment of sentence was passed.

*Errors assigned* were, (1–9) complaints of illegal conduct and speech during trial, by counsel for commonwealth; (10, 11) rulings on the calling of jurors; (12) overruling motion to quash; (13) ruling on evidence, quoting the bill of exception; (14) that the evidence did not warrant a conviction of murder of the first degree.

*Wm. Kerper Stevens* of *Stevens & Stevens,* for appellant.—The judgment should be reversed on account of the improper conduct of the counsel for the commonwealth: Tucker v. Henniker, 41 N. H. 317; Barker v. Dixey, Cas. Temp. Hardwicke, 264; Taylor on Evidence, sec. 1367; Greenleaf on Evidence, sec. 340; act of May 23, 1887, P. L. 158; Wharton's Criminal Practice and Pleading, sec. 561.

• The husband and wife being one person in the eyes of the law, the court below erred in allowing counsel for the commonwealth to call her as a witness for the commonwealth and afterwards to comment on her omission to testify: Act of May 21, 1885; Darlington's App., 86 Pa. 520; Bitner v. Boone, 128 Pa. 567; Phillips on Evidence, 78; Sower v. Weaver, 78 Pa. 443.

It is not proper for counsel at any stage of the case to state their personal conviction of their client's innocence, to do so is a breach of professional privilege, well deserving the rebuke of the court: Wharton's Criminal Pleading, sec. 570; Wharton's Criminal Evidence, sec. 64; Pollard v. The State, 26 S. W. R. 70.

Commonwealth's privilege to stand aside jurors against whom there is no ground for challenge for cause, is a greater advantage than the twenty peremptory challenges allowed the defendant.

*J. H. Jacobs, Frank K. Flood,* district attorney, *Charles H. Tyson* and *H. P. Keiser* with him, for appellee.—The first specification of error is incomplete in that it fails to quote the record. The reason for the court's overruling the objection made by appellant's counsel is omitted entirely: Hutchinson v. Campbell, 25 Pa. 273; Criswell v. Altemus, 20 Pa. 124; McCord v. Durant, 134 Pa. 184; Rule XXIII, Supreme Court, Myers v. Hart, 10 Watts, 104.

At the time the offer referred to in the 2d assignment was made, the counsel for the commonwealth declared that he was willing to allow the wife to go upon the stand at that time and tell what she knew about the occurrence, saying at the same time that he did not know and did not care what she would say, and if the defendant made no objection, she might go on the stand and testify. The appellant's counsel objected, and that was the end of it. It cannot be said that the offer injured the appellant or in any way lessened his chances for acquittal. Benson v. U. S., 146 U. S. 325; 16 Am. & Eng. Ency. of Law, 527.

OPINION BY MR. JUSTICE DEAN, March 25, 1895:

The defendant having been found guilty of murder of the first degree, and having been sentenced accordingly, he presses this appeal.

The testimony was ample to establish, in substance, these facts:—Weber was a laborer, twenty-six years of age; from his birth had lived in the city of Reading; in April, 1892, had married Agnes Klemmer, a daughter of the deceased, Justus Klemmer, of Reading. Soon after marriage, they went to housekeeping, and continued to live together until some time in the early part of the year 1893, when the husband was convicted of a criminal offense, and sentenced to one year's imprisonment in the Berks county jail. This resulted in breaking up the home; one child having been born to them, the wife, with this child, went to her father's house. The father and daughter took the furniture and household goods, with some of Weber's clothing, and stored them in the house of Walter Miller, a brother-in-law of Klemmer; the child remained with the grandfather, and its mother went out to service. Matters continued in this condition until May 14,

1894, when Weber was discharged from prison by reason of expiration of term. He immediately sought out his wife where she was employed, and had several interviews with her, but they did not again live together. Weber thought, and probably correctly, that his wife's father was opposed to her living with him. He then determined to get possession of some of the household goods stored at Miller's, asserting they belonged to him; had one or more notices sent to his wife, by aldermen, demanding them. On the 7th of June, he bought a revolver at one hardware store and cartridges at another, then went to his brother's house and loaded the pistol. About six o'clock on the evening of the eleventh of June, he went to Miller's house, where the furniture was stored, and asked Mrs. Miller if his wife and her father were there yet; she said not; he said they were coming to divide the furniture; he waited about an hour on the steps, until they came. Some of the furniture was in the cellar, and at the suggestion of Klemmer, the three, Weber, his wife and Klemmer started down the steps; Miller, just then coming in, followed with a light; when they got to the cellar, they undertook to set apart for Weber articles that belonged to him; he demanded to know where a bedroom set was, belonging to him; Klemmer replied, he had all that belonged to him, and more too; he then demanded his marriage certificate; Klemmer replied, his—Weber's wife had that, and she had a right to it; then Klemmer started to leave the cellar by a rear door opening out into the yard; Weber made a profane answer, drew a revolver, aimed at Klemmer and snapped it, again pulled the trigger, this time discharging it, shooting Klemmer in the arm, shattering the bone, again shooting him when he fell or was falling; this shot in the brain, causing almost instant death,—another shot, either preceding or following these two, it is not clear which, was fired, causing a slight wound on the arm. He then followed his wife to another part of the cellar, thrust the revolver in her bosom, snapped it, and ran out into the alley. There was evidence of threats made by him against his father-in-law, both while in prison, and after he was discharged. He denied, on the witness stand, these threats, and declared that Klemmer and Miller assaulted him in the cellar; that in self-defense he drew the revolver, when Miller caught and pulled his arm, causing its

discharge.   His story, throughout, at best, was improbable, and the jury did not believe him.   It was improbable, not alone because in flat contradiction of Miller's statement, the only other competent witness of the shooting, but because its improbability was inherent in the story itself.   If Miller had not testified at all, men of ordinary observation and experience would not have thought it credible.   It is seldom, in the trial of felonious homicides, the evidence of malice aforethought, and the fully formed purpose to kill, is so abundant and convincing.

The learned judge of the court below, in a charge, clear, impartial and comprehensive, as to the law applicable to every phase of the evidence, left the defendant's case to the jury.   In fact, so impartial was the charge, that the able counsel for defendant do not complain of it.

But on appeal, fourteen assignments of error are pressed upon us for consideration.   Nine of these complain of illegal conduct or speech during the trial, by counsel for the commonwealth; two of them aver fatal irregularities in impaneling the jury; one, to bringing the prisoner into court manacled in presence of the grand jury, which was made the ground for a motion to quash the indictment; one, to alleged error in the admission of testimony of a witness; and the fourteenth, and last, that the evidence did not warrant a conviction of murder of the first degree.   As to this last, we have already spoken; the evidence fully warranted the verdict.   As to the others, the substance of them was considered by the court below in a very full opinion, overruling the motion for a new trial.   The gravity of the consequences of this judgment to the defendant, has, however, moved us to re-examine his complaints of error, to see if there be any such merit in them as calls for reversing the judgment.

The first assignment is :—" The court erred in allowing counsel for commonwealth to comment on failure of defendant to call his wife as a witness."   The wife saw her husband kill her father ; she was incompetent as a witness for the commonwealth, because she could not be called to testify against her husband ; she was, however, a competent witness in his behalf ; he could have called her to the stand ; if his statement was true that he acted only in self defence, and the pistol was discharged in a scuffle, without intent to kill, why did he not call her to cor-

roborate him? Counsel for commonwealth argued, the fair inference was, her testimony would have contradicted her husband; this was not unwarranted comment; the force of it was for the jury; if she had been a competent witness for the commonwealth, and had not been called, it would have been allowable for defendant's counsel to have argued it was because her testimony would have contradicted Miller. There is, under the circumstances, no legal presumption raised by the refusal to call a competent witness; it is simply a fact for the consideration of the jury, entitled to such weight, as, in view of all the circumstances of the particular case, it ought, in their judgment, to have.

The second assignment is, " That the court erred in allowing commonwealth to offer to place the wife of defendant on the stand as a witness for the prosecution, and in not striking the offer from the record." It is argued, that the testimony of the wife was clearly inadmissible, and must have been so known by counsel for commonwealth, but, although the offer was overruled yet, the mere fact of its having been made was highly prejudicial to the defendant, and was so intended to be.

We know of no way the court can rule on an offer without hearing it; it was to call the wife, if defendant did not object; defendant did object, and she was rejected; there could have been no other ruling except to admit her testimony, and this would have been manifest error. The assignment in effect is, that the commonwealth called an incompetent witness, the defendant objected, and the court sustained the objection, therefore, the court erred. The offer being overruled, that, necessarily, made it a silent part of the record, and it had no effect in the trial, that striking it from the record would cure.

The third, fourth and fifth assignments complain, that the court erred in permitting counsel for commonwealth to argue matters of fact to the jury, not sustained by any evidence. The remarks of counsel as here presented, were taken down by the private stenographer of counsel for defendant, and not by the court reporter. Counsel for commonwealth deny they were made as here printed; the stenographer, when examined under oath, does not testify the report is full, nor does he testify with any positiveness that it is accurate; but assuming we have before us a correct report, the words should have been objected

to at the time they were uttered. No judge can be expected to anticipate the line of argument counsel will adopt, and caution him against improper speech; a judge may and often does, of his own motion, stop counsel in improper statements, and administer rebuke. But he may not give close attention to all that counsel say when addressing the jury; nor is he required to; that is the duty of opposing counsel, and if the argument be objectionable, the objection should at once be made to the court; then the words can be taken down by the official reporter, and be made the subject of ruling by the court, and review here. That counsel on one side may go into court with their own stenographer, and take down the address of the opposing counsel to be made the subject of criticism and objection, not at the trial, but afterwards in this court, is so unfair to the court below, and so obviously prejudicial to an even-handed administration of justice, that we dismiss these assignments without further notice.

The sixth assignment is, that the court permitted counsel in the argument to attack the character of defendant, not from the evidence, but by inference from the fact that he had called no witnesses to testify to good character.

If this was done as alleged, clearly it was unwarranted. The previous character of one charged with a crime has no bearing whatever on his guilt, unless he chooses to make it the subject of consideration by attempts to prove a good character. If he do not do this, as he did not here, the commonwealth can offer no evidence on the subject. He is entitled to the presumption of innocence until his guilt be proven by the commonwealth by evidence to sustain the particular averments in the indictment to which he has pleaded; he may then offer evidence to contradict that adduced by the commonwealth; and to establish his innocence, or to raise a doubt as to his guilt, may adduce evidence of previous good character; then, and then only, is the door open to the commonwealth to impeach his character preceding the crime charged. To permit an inference of bad character to be argued, because he has not adduced evidence of good character, is a palpable evasion of a well settled and humane rule. Prisoners are not to be convicted, because their past lives indicate they are capable of committing crime, but because the proof shows, beyond a reasonable doubt, they com-

mitted the particular crime charged in the indictment. Until they raise the question of previous character, the commonwealth cannot, either by evidence or argument.

But, how are improper statements and unlawful inferences to be taken advantage of on a review of the proceedings here? Clearly, as we have already said in reference to the other assignments of error, by objection at the trial. Prompt objection then, we doubt not, would have relieved defendant's counsel from the burden of pressing the assignments of error here. The court's attention was not called to the matter by protest or objection; there was no erroneous ruling by the court; there is not even upon the record, an official and trustworthy report of the words. In this court, an error of speech by antagonistic counsel is complained of, and a reversal of the judgment sought because of it. If the commonwealth had elicited from a witness on the stand irrelevant or incompetent testimony without objection, and there had been no request by defendant to the court to withdraw it from the consideration of the jury, it would hardly have been argued, in view of the settled law, that this court should reverse the judgment. His silence in the court below would have been conclusive against his complaint here. And there is no distinction, in this respect, between improper evidence and improper argument. It is the duty of counsel to aid the court by their learning and fidelity, in the administration of justice; any other rule of duty would, probably, lead to very undesirable results; because, without it, the most effective defense astute counsel could make for criminals with a hopeless case on the evidence, would be, by silence, to invite errors of omission and commission by the court and opposing counsel, with the object of securing reversals on review; and thus, by persistent, expensive and vexatious appeals, wear out the prosecution.

The attitude of defendant's counsel, as exhibited by the record, is, in substance, this: "Counsel for commonwealth erred in the matter of his address to the jury; I erred by remaining silent when I should have promptly brought his error to the notice of the court by objection; the court committed no error, but its judgment should be reversed because it did not perform my duty."

There are, it is true, rare instances, where judgments of the

serious character of this one have been set aside because of errors or slips, by prisoner's counsel, which may have brought about the adverse verdict; but there is no instance of it having been done, where the trial on the whole was so fair as this, and where the verdict was in accord with the overwhelming weight of the evidence.

The seventh, eighth and ninth assignments are to arguments, which though intemperate in language, cannot be said to be without foundation in the evidence.

The tenth and eleventh assignments of error relate to the empaneling of the jury. The forty-eight jurors drawn were not present in court when this jury was called. Whatever inequality, if any, is produced by the right of the commonwealth to stand aside jurors until the panel is exhausted, the right existed; all the jurors present had been called and either sworn, challenged or stood aside; eleven were accepted, sworn and in the box; the twelfth juror was called from those stood aside; the defendant's peremptory challenges were not then exhausted; he claimed the right to have called all the jurors' in attendance, before any of those stood aside should be called. As twelve were out in their room deliberating on a verdict in another case, this could not be done without serious interruption of the business of the court. Under the circumstances, it was within the discretion of the court to proceed with this trial, without awaiting the return of the jury then in their room. Especially was this a reasonable exercise of discretion, when the defendant's peremptory challenges had not been exhausted.

The twelfth assignment of error is to permitting "the defendant, before indictment found, to be brought handcuffed into the court-room, in presence of the grand jury."

What reasonable precautions the officer having the prisoner in charge, shall take to keep him safely in his passage from prison to the court room, during the progress of the trial, must largely depend upon the judgment of the officer. The fact that he was brought into the court room handcuffed, and the grand jury may there have seen him thus secured, does not warrant the inference, that, therefore, they were prejudiced against him in finding the bill of indictment. An athletic young man, charged with a high crime, of course would be securely kept to await trial; while not in court, he would be

within prison walls; going to and fro from the court room, escape would be guarded against, either by a prison van or handcuffs; the grand jury would have known this if they had not seen it.

The thirteenth assignment is to the admission of the testimony of George Snyder, a fellow prisoner who testified to threats made by defendant against his father-in-law, while in prison. The witness was called after the testimony of defendant had closed; what he testified to, would have been evidence in chief. It was material as part of the commonwealth's case. But he was also called to contradict defendant, who had been asked when on the stand, whether he had not made the threats, in substance, testified to by Snyder; he denied he had made them.

The order of introducing testimony, generally, is in the discretion of the trial judge, and we see no abuse of that discretion here. But without this, the evidence was clearly admissible at this stage of the trial, as affecting the credibility of defendant's testimony.

After a most careful examination, we are all of the opinion, there is nothing in the record, or the assignments of error, which should move us to disturb the judgment; it is therefore affirmed, and it is directed that the record be remitted to the court below, that the sentence may be carried into execution according to law.