## UNITED STATES v. SIMPSON.

(District Court, D. Colorado.  April 24, 1919.)

### No. 3168.

1. INTOXICATING LIQUORS ⬤⤳222—TRANSPORTATION OF LIQUOR INTO PROHIBI-
TION STATES—INDICTMENT—NEGATIVING EXCEPTIONS.

An indictment for violation of Act March 3, 1917, § 5, known as the Reed
Amendment (Comp. St. 1918, § 8739a), making it an offense to "cause in-
toxicating liquors to be transported in interstate commerce, except for
scientific, sacramental, medicinal or mechanical purposes," into a pro-
hibition state, need not negative the excepted uses, which is matter of
defense.

2. COMMERCE ⬤⤳16—INTERSTATE COMMERCE—AUTOMOBILE AS "COMMON CAR-
RIER."

An automobile may be so used as to become a "common carrier" in
interstate commerce.

[Ed. Note.—For other definitions, see Words and Phrases, First and
Second Series, Common Carrier.]

3. INTOXICATING LIQUORS ⬤⤳138—TRANSPORTATION IN INTERSTATE COMMERCE.

One who buys intoxicating liquor in one state and transports it in his
own automobile into a prohibition state for his own personal use, and not
for sale, does not transport it in interstate commerce, within the Reed
Amendment (Act March 3, 1917, § 5 [Comp. St. 1918, §§ 8739a, 10387a–
10387c]).

Criminal prosecution by the United States against Everett L. Simp-
son.  On demurrer to indictment.  Sustained as to third count.

Harry B. Tedrow, U. S. Dist. Atty., of Boulder, Colo.
Edmund J. Churchill, of Denver, Colo., for defendant.

LEWIS, District Judge.  This is a demurrer to an indictment charg-
ing the defendant with the violation of section 5 of the Act of March
3, 1917 (Reed Amendment) 39 Stat. 1069, c. 162 (Comp. St. 1918, §§
8739a, 10387a–10387c).  The three counts charge the same offense, each
putting it in a different way.  Each charges that the defendant, on Au-
gust 25, 1917, did unlawfully cause five quarts of whisky to be trans-
ported in interstate commerce from Cheyenne, Wyoming, to Denver,
Colorado; the laws of the latter state prohibiting the manufacture and
sale therein of intoxicating liquor for beverage purposes.  The second
count adds that the transportation was in an automobile, and that the
liquor was to be used for other than scientific, sacramental, medicinal,
or mechanical purposes; and the third adds that prior to the time of
transportation the defendant was in Cheyenne, bought, paid for and
owned the liquor, and thereafter himself, as such owner, transported
same from Cheyenne to Denver in an automobile then and there owned
by him, for his own personal use other than for scientific, sacramental,
medicinal or mechanical purposes.

[1] The demurrer to the first count is rested on the ground that the
exceptional uses for which the liquor may be brought in is not nega-
tived.  The statute reads thus:

⬤⤳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes," etc. Comp. St. 1918, § 8739a.

The permissible purposes are matters of defense. United States v. Cook, 17 Wall. 168, 21 L. Ed. 538; Nelson v. United States (C. C.) 30 Fed. 112, 116; Shelp v. United States, 81 Fed. 694, 26 C. C. A. 570; United States v. Cook (D. C.) 36 Fed. 896; United States v. Stone (D. C.) 49 Fed. 848; The Mary Merritt, Fed. Cas. No. 9,222.

[2] It is said that the second count is bad because transportation by automobile is not a violation of the Act. An automobile may be used so as to become a common carrier in interstate commerce.

The District Attorney stated in argument that the details of the transaction were set out in the third count for the purpose of testing, in the shortest and most inexpensive way, whether the bringing in of liquor in the manner stated in that count is a violation. It is difficult to believe that the innumerable daily transactions, non-commercial in character and privately carried on across State lines, come within the reach of national regulatory power given by the Constitution; and yet I confess the broad language in some of the cases does not leave me entirely free from doubt. After all, my conclusion is reached from what is said about the Uncle Sam Oil Co. in the Pipe Line Cases, 234 U. S. 548, 561, 562, 34 Sup. Ct. 956, 959 (58 L. Ed. 1459). The facts there considered are apt. Justice Holmes, for the majority, said:

"There remains to be considered only the Uncle Sam Oil Company. This company has a refinery in Kansas and oil wells in Oklahoma, with a pipe line connecting the two, which it has used for the sole purpose of conducting oil from its own wells to its own refinery. It would be a perversion of language, considering the sense in which it is used in the statute, to say that a man was engaged in the transportation of water whenever he pumped a pail of water from his well to his house. So as to oil. When, as in this case, a company is merely drawing oil from its own wells across a State line to its own refinery for its own use, and that is all, we do not regard it as falling within the description of the Act, the transportation being merely an incident to use at the end."

[3] Of course the prime inquiry there was whether the Uncle Sam Oil Company was a common carrier; but to be a common carrier within the Act it was necessary that it be found to be engaged in transportation in interstate commerce, and the transportation in interstate commerce was the part of the inquiry to which Justice Holmes addressed himself. That this is so is demonstrated by the Chief Justice:

"The view which leads the court to exclude it [from the operation of the Act] is that the company was not engaged in transportation under the statute, a conclusion to which I do not assent. The facts are these: That company owns wells in one State from which it has pipe lines to its refinery in another State, and pumps its own oil through said pipe lines to its refinery, *and the product, of course, when reduced at the refinery, passes into the markets of consumption* [italics mine]. It seems to me that the business thus carried on is transportation in interstate commerce within the statute."

I take it that the fact stated by the Chief Justice (in italics) was a necessary element to the conclusion he reached. That is to say, he did not agree with the majority that the transportation was "merely an incident to use at the end," but that the transportation from Oklahoma

to Kansas, the refining of the oil in Kansas, and the passing of the refined oils into the markets of consumption should be viewed as one transaction, and that the three separate acts dealing with the subject constituted transportation in interstate commerce. Kelley v. Rhoads, 188 U. S. 1, 23 Sup. Ct. 259, 47 L. Ed. 359.

Dan Hill's Case, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed. ——, recently decided by the Supreme Court, is not in point, as I view it. That also was a prosecution for violation of the Reed Amendment; but the indictment charged that Hill, while in Kentucky, boarded a trolley car being operated by a common carrier corporation engaged in interstate commerce, and by means thereof, did cause himself and the said intoxicating liquor, then upon his person, to be carried and transported in interstate commerce into the State of West Virginia. The charge was exactly within the statute—"cause intoxicating liquors to be transported in interstate commerce." Hill caused the liquor to be transported in interstate commerce, in the manner charged in the indictment, as much so as if he had separately intrusted the liquor to the common carrier for transportation.

The demurrer is overruled as to the first and second counts, and sustained as to the third count. It will be so ordered.