### BREITMAYER v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. March 5, 1918.)

#### No. 3105.

1. ARMY AND NAVY ⬥20—SELECTIVE DRAFT ACT—CONSTITUTIONALITY.
    Selective Draft Act May 18, 1917, c. 15, 40 Stat. 76, is constitutional.

2. ARMY AND NAVY ⬥40—OFFENSES—FAILURE TO REGISTER—EVIDENCE.
    In a prosecution for willful failure and refusal to present himself for, or to submit to, registration, as required by Selective Draft Act, § 5, and the presidential proclamation thereunder, evidence *held* sufficient to establish the corpus delicti, showing that defendant was within the draft age and that he failed to register in the precinct where he permanently resided.

3. CRIMINAL LAW ⬥430—CERTIFIED COPIES—ADMISSIBILITY.
    As Act Mich. June 20, 1905 (Pub. Acts 1905, No. 330), providing that original birth certificates taken thereunder shall be transmitted to the secretary of state, was prospective, and made no provision as to records of births in the custody of county clerks under Act Mich. March 27, 1867 (Pub. Acts 1867, No. 194), a certified copy of a birth record in the custody of the county clerk is, under the general rules, admissible in evidence; there being no provision for the certification of such records by the secretary of state, as in case of birth certificates prepared under the act of 1905.

4. CRIMINAL LAW ☜339—EVIDENCE—IDENTITY OF ACCUSED.

In a prosecution for failure to register as required by Selective Draft Act, § 5, where defendant was indicted under the name by which he was known, instead of his real name, it was not error, and certainly was not prejudicial, to admit evidence identifying defendant with the person named in a birth certificate, which it was claimed was issued on the occasion of defendant's birth.

5. CRIMINAL LAW ☜1186(4)—HARMLESS ERROR—DEFECTS IN INDICTMENT—PREJUDICE.

In view of Rev. St. § 1025 (Comp. St. 1916, § 1691), declaring that no indictment shall be deemed insufficient, nor shall the judgment be affected, by reason of any defect or imperfection in matter of form only, which shall not tend to prejudice the defendant, an inaccurate statement as to the voting precinct in which defendant resided, contained in an indictment charging failure to register as required by the Selective Draft Act, must, in view of the usual knowledge prevailing as to such locations, be disregarded.

6. CRIMINAL LAW ☜535(½)—CONFESSION—CORROBORATION.

Where there is independent testimony tending substantially to prove the corpus delicti, the confession of the accused, as so corroborated, is admissible.

7. INDICTMENT AND INFORMATION ☜111(2)—EXCEPTIONS—AVERMENTS.

Where a statute defining an offense contains exceptions in the enacting clause, an indictment found under it must aver that defendant is not within such exceptions.

8. CRIMINAL LAW ☜315—PRESUMPTIONS—CONTINUATION.

Evidence that defendant, who was indicted for failure to register as required by the Selective Draft Act, had been a member of the National Guard some seven or eight years previous, raises no presumption that he was a member of the National Guard at the time he failed to register.

9. ARMY AND NAVY ☜20—SELECTIVE DRAFT ACT—DUTY TO REGISTER.

An officer or enlisted man of a National Guard unit, not called into federal service until after the day fixed by presidential proclamation for registration in accordance with Selective Draft Act, § 5, does not fall within the provision excepting officers and enlisted men of the National Guard in the service of the United States from registration.

10. ARMY AND NAVY ☜40—SELECTIVE DRAFT ACT—OFFENSES—EVIDENCE.

In a prosecution for failure to register as required by Selective Draft Act, § 5, evidence *held* sufficient to show that defendant was not a member of the National Guard in the service of the United States at the date of registration.

In Error to the District Court of the United States for the Southern Division of the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Milton V. Breitmayer was convicted of willful failure and refusal to present himself for or submit to registration, as required by Selective Draft Act, § 5, and the presidential proclamation thereunder, and he brings error. Affirmed.

Joseph B. Beckenstein and Maurice Sugar, both of Detroit, Mich., for plaintiff in error.

John E. Kinnane, U. S. Atty., and J. Edward Bland and Louis W. McClear, Asst. U. S. Attys., all of Detroit, Mich.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WARRINGTON, Circuit Judge. The plaintiff in error was indicted June 13, 1917, for willful failure and refusal to present himself for or submit to registration according to requirement of the President's proclamation, and of section 5 of the Selective Draft Act, each bearing date May 18, 1917. Proc. 1917, p. 20; Public No. 12, 65th Congress, c. 15, 40 Stat. pp. 76, 80, U. S. Comp. Stat. Supp. 1917, pp. 61, 66. The indictment in substance charges that defendant, a male person within the prescribed age limits, was required under the proclamation of the President to appear and submit to registration on June 5, 1917, between stated hours, in the city of Detroit at the place of registration in the precinct, being a specified voting precinct, in which defendant "lived and had his permanent home and actual place of legal residence and from which he was not temporarily absent," his residence being designated by street and number, but that he willfully failed and refused so to appear and submit to registration, and that defendant was not at the time "an officer or an enlisted man of the Regular Army or Navy or of the Marine Corps of the United States" nor "an officer or enlisted man of the National Guard or Naval Militia in the service of the United States," nor "exempted or excused from registering under the provisions" of the act of Congress before named.

Upon arraignment defendant waived the reading of the indictment and stood mute, whereupon a plea of not guilty was entered under direction of the court. The cause was heard before the court and a jury, and at the close of the evidence presented by the government, motion made in defendant's behalf for a directed verdict was denied, subject to exception. No testimony was offered for defendant, and no exception was reserved to the charge of the court. Defendant was found guilty as charged, sentence was pronounced, and error is prosecuted.

The scheme of defense relied on was, in the first place, to show constitutional invalidity of the Selective Draft Act, and, in the next place, to require the government strictly to prove the charges of the indictment.

[1] 1. The first feature of the defense must, of course, fail, since the Supreme Court, on January 7, 1918, held the act to be constitutionally valid (Arver v. United States, 245 U. S. 366, 38 Sup. Ct. 159, 62 L. Ed. ——), and this ruling was reaffirmed on the same day in Perkins v. Jones, 245 U. S. 390, 38 Sup. Ct. 166, 62 L. Ed. ——, and again, on January 14, in Goldman v. United States, 245 U. S. 474, 38 Sup. Ct. 166, 62 L. Ed. ——, Kramer v. United States, 245 U. S. 478, 38 Sup. Ct. 168, 62 L. Ed. ——, and Ruthenberg v. United States, 245 U. S. 480, 38 Sup. Ct. 168, 62 L. Ed. ——.

[2-4] 2. In the second branch of the defense it is insisted that the corpus delicti was not proved. Counsel's theory is that the corpus delicti included at least the elements of age and failure to register in the precinct where defendant permanently resided; that there was no substantive proof of either, and hence that admissions of defendant were not sufficient to sustain the conviction. We think there was sufficient proof, apart from the admissions, fully to show both of these elements. As to the question of age, a close relative, who lived near

defendant's place of birth and had known him ever since he was a child, testified in effect that, while he was not sure of defendant's age, yet that "he is about 27 or 28." This is in accord with a birth certificate which was received in evidence, showing the date of birth to have been April 24, 1889. Exception, however, was reserved to the admission of the certificate in evidence on the grounds, first, that it was not certified by the proper official; and, second, that it does not purport to be the certificate of defendant's birth.

These objections are not tenable. It appears in the record without dispute that the birth certificate was "duly certified by the clerk of Jackson county," Mich. Registration of births was provided for by statute approved March 27, 1867. Laws Mich. 1867, p. 266; Comp. Laws Mich. (Ed. 1897) p. 1451. Section 1 required the supervisors or assessors annually to ascertain the births occurring in their respective townships or cities and to make accurate returns of them to the clerk of the county in which the township or city was situated. Section 3 provided that the county clerk should record the births, prescribing the form of record, which included date of birth, name and sex of child, place of birth, and names, residence, and nativity of parents, etc., and requiring each clerk annually to make and transmit to the secretary of state a certified copy of the records in his office concerning births, etc., occurring during the year.

It is urged that the birth certificate should have been authenticated by the secretary of state, instead of the clerk of Jackson county. This claim is based upon a statute approved June 20, 1905. Public Acts Mich. 1905, p. 508. That statute, it is true, provides for the registration of births and the appointment of local registrars. Certificates of births, however, are made out by the attending physicians or midwives on blanks supplied by the secretary of state and distributed by the local registrars, who in turn transmit the originals to the secretary of state. This statute is in terms simply prospective. Thus the secretary of state is made the custodian of all original birth certificates required under the statute of 1905, just as the several county clerks were made custodians of those provided for under the statute of 1867. The statute of 1905, we observe, repealed so much of the act of 1867 as was "inconsistent with" the later act. Still there is no perceivable inconsistency between the two acts so far as the custody of the two sets of original birth certificates is concerned, since no provision was made for transferring the originals of birth certificates in the custody of the county clerks to the custody of the secretary of state. Further, the secretary of state is empowered to furnish certified copies of original birth records which have been transmitted to his office in accordance with the act of 1905, and such certified copies are made prima facie evidence in all courts of the "facts therein stated"; but this power is not extended to birth records held by the county clerks under the act of 1867, nor does any such power appear to have been created at any time respecting these latter birth records. How, then, are such county clerk records to be proved?

In situations similar in principle to this the rule was long since laid down in this country that a copy of a record, duly certified by a public

officer whose duty it is to keep the original, should be received in evidence. United States v. Percheman, 32 U. S. (7 Pet.) 51, 85, 8 L. Ed. 604; Meehan v. Forsyth, 65 U. S. (24 How.) 175, 176, 16 L. Ed. 730; Commonwealth v. Meehan, 170 Mass. 362, 363, 364, 49 N. E. 648; Childs v. State, 55 Ala. 28, 30; 3 Wigmore on Ev. § 1667, at page 2102; 2 Wharton, Crim. Ev. (10th Ed.) § 527c. We therefore hold that the present certified copy of birth certificate is an admissible instrument of evidence wherever relevant to the issue. We have in mind, of course, the objection that this instrument does not purport to be a certificate of defendant's birth. It is true that the certificate states the name of the child to be Vern W., not Milton V., Breitmayer; but the witness who testified to defendant's age, as pointed out, stated, "I know the defendant, Milton V. Breitmayer, have known him all my lifetime," and, further, that defendant's correct name is Vern William Breitmayer. Moreover, another witness closely connected with defendant and on most intimate terms with him testified, "I have known this defendant for the last twelve years by the name Milton V. Breitmayer." Thus, according to the effect of the testimony, defendant was indicted under the name by which he was known, instead of his real name; and we see no error, certainly no prejudicial error, in identifying defendant with the person named in the certificate.

[5, 6] Upon the question whether defendant failed to register, a printed copy of an election book, showing boundaries of election districts and locations of booths, and a map of the city of Detroit showing the wards and districts on the west side of the city, were received in evidence. Exceptions were reserved both to the copy of the book and the map. Neither appears to have been authenticated by any competent official or custodian. We need not, however, pass on the question of admissibility. The relevant parts of both book and map were otherwise proved, and so no prejudicial error arose through their introduction. The testimony shows that defendant had resided at No. 57 Baltimore, West, for nearly a year prior to the day fixed for registration, and that this residence is in the Second ward, Tenth district. It is to be noted that the indictment states that the voting precinct is the Thirteenth district of the Second ward; yet in view (a) of the usual knowledge prevailing as to locations of voting places within a resident's own ward, and (b) of the requirement of section 1025 of the Revised Statutes (Comp. St. 1916, § 1691) to disregard formal defects, etc., it is plain that this mistake in allegation of the indictment did not "tend to the prejudice of the defendant." Ulmer v. United States, 219 Fed. 641, 642, 134 C. C. A. 127 (C. C. A. 6); Simpson v. United States, 241 Fed. 841, 843, 844, 154 C. C. A. 543 (C. C. A. 6); Kasle v. United States, 233 Fed. 878, 883, 884, 147 C. C. A. 552 (C. C. A. 6). In truth no claim of prejudice on this account is made. Further, testimony was offered without objection or contradiction, showing that defendant was "not registered in the Tenth district of the Second ward. No such man is registered there."

Now, in addition to the evidence thus far considered, several witnesses testified to distinct confessions made by defendant shortly before the indictment; and conceding that an unsupported confession alone

cannot be received and treated as sufficient evidence of the corpus delicti, for instance, as laid down by Judge Cooley and his associates in People v. Lane, 49 Mich. 340, 341, 13 N. W. 622, yet the rule is, as that decision implies, that where there is independent testimony as here, tending substantially to prove the corpus delicti, the confession so corroborated is admissible. This is deducible from the decision in Isaacs v. United States, 159 U. S. 487, 490, 16 Sup. Ct. 51, 40 L. Ed. 229, and the rule is declared in Flower v. United States, 116 Fed. 241, 247, 53 C. C. A. 271 (C. C. A. 5); Rosenfeld v. United States, 202 Fed. 469, 474, 120 C. C. A. 599 (C. C. A. 7); Naftzger v. United States, 200 Fed. 494, 499, 118 C. C. A. 598 (C. C. A. 8); 3 Wigmore on Ev. §§ 2070, 2071. Defendant admitted that he was 28 years of age and that he had not registered. He is an artist, and would seem from his admissions to have the faculty of expressing himself with clearness. He said he was a Socialist, and that "it was against his principles to register"; and, although he was admonished against persisting in the mistake of not registering and also given opportunity to register, he refused to change his course, stating that he had been expecting to be arrested.

[7-10] 3. The next objection is that the government failed to prove that defendant did not come within the exceptions enumerated in section 5 of the Selective Draft Act. The portion of the act relied on is the language qualifying the requirement to register:

" * * * Except officers and enlisted men of the Regular Army, the Navy, and the National Guard and Naval Militia while in the service of the United States."

The objection is not that there is any defect in the indictment in this respect; as we have seen, its allegations expressly negative the exceptions. It is a general rule that where a statute defining an offense contains exceptions in the enacting clause, an indictment found under it must aver that defendant is not within such exceptions. United States v. Cook, 17 Wall. (84 U. S.) 168, 178, 21 L. Ed. 538; Ledbetter v. United States, 170 U. S. 606, 611, 18 Sup. Ct. 774, 42 L. Ed. 1162; Shelp v. United States, 81 Fed. 694, 696, 26 C. C. A. 570 (C. C. A. 9). However, whether negative averments contained in an indictment and involving such exceptions will be accepted as true, unless, as a consequence of the facts residing peculiarly within his knowledge, the defendant assumes the burden of disproving the averments, presents a question which, in view of the course pursued by the government and the instructions of the trial judge in the instant case, need not be decided.

Adverting to the evidence, one witness stated that defendant had been a member of the National Guard in Jackson, Mich., seven or eight years before, though he did not know whether the membership still existed. Another witness, who knew defendant intimately and in part of whose home (57 Baltimore, West) defendant had resided for nearly a year prior to registration day, testified that he knew nothing of defendant belonging to any military organization, or of his drilling or wearing any uniform. As respects the first of these statements, no presumption arose, as counsel claim, that defendant was still a member of the National Guard. As regards the second statement, it hardly is conceivable that the fact, if it was a fact, that defendant was in the

service of the United States as a member of one or another of these military or naval organizations, could have escaped the observation and knowledge of this intimate friend; and this improbable feature is accentuated by the statement of defendant, made after registration day, as before pointed out, that he was expecting to be arrested for not registering. More than this: It is shown that on registration day defendant had his studio in Detroit. Presumably his occupation as an artist was inconsistent with his holding a position as an officer or enlisted man in the Regular Army or the Navy of the United States. And while the Selective Draft Act, empowering the President to call the National Guard and the National Guard Reserves into the service of the United States, was, as we have seen, enacted May 18, 1917, yet the proclamation of the President calling the Michigan portion of those organizations into such service was not announced until July 3d, and did not require them actually to enter the service until the 15th of that month (Proc. 1917, p. 37); hence it scarcely need be said that, even if defendant was a member of the Michigan National Guard, no statutory exception excused him on that account from registering in June.

Thus the government assumed the burden of proving the negative averments of the indictment, and the trial judge instructed the jury in substance that the burden was upon the government to prove the truth of these averments beyond a reasonable doubt. It cannot be said that the evidence, circumstantially supported as it is, did not justify the verdict.

It must follow that the motion to direct a verdict for defendant, based on the objection just considered, as also upon the other objections, was rightly denied. All the assignments have not been mentioned, though they have been fully considered; and we find no material error in respect of any of them.

Accordingly the judgment will be affirmed.