## BATES v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. December 10, 1920.)

No. 3423.

1. **Criminal law ⟨⟩936(5)—Evidence surprising defendant held not ground for new trial, where no objection.**

That a defendant was taken by surprise by testimony introduced in rebuttal *held* not ground for new trial, where it was not objected to, and no attempt was made to contradict it, although witnesses, who necessarily knew the facts and could have contradicted it, if untrue, were either in the courtroom or could have been brought in without delay.

2. **Criminal law ⟨⟩938(1)—New trial for alleged newly discovered evidence held properly refused.**

In a prosecution for operating an unbonded distillery, in violation of Rev. St. § 3281 (Comp. St. § 6021), and using food products therein contrary to the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛—3115⅛kk, 3115⅛l–3115⅛r), *held*, that the court did not abuse its discretion in denying a new trial for alleged newly discovered evidence.

3. **Criminal law ⟨⟩911—Granting new trial discretionary.**

A motion for new trial is addressed to the discretion of the trial court.

In Error to the District Court of the United States for the Eastern District of Tennessee; John E. McCall, Judge.

Criminal prosecution by the United States against E. R. Bates. Judgment of conviction, and defendant brings error. Affirmed.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Thos. L. Carty, of Knoxville, Tenn., for plaintiff in error.
W. T. Kennerly, U. S. Atty., of Knoxville, Tenn.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. Plaintiff in error was indicted in the United States District Court for the Eastern District of Tennessee jointly with A. M. Blackwell and John Wilson. The first count of this indictment charged the defendants with operating an unbonded and unregistered distillery in violation of R. S. § 3281 (Comp. St. § 6021); the second count, with working in an unregistered distillery; the third count, with using food products to make whisky for beverage purposes, in violation of the Lever Act of August 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r).

To this indictment all of the defendants pleaded not guilty. They were jointly tried, and found guilty upon the first and third counts of the indictment. The defendants Blackwell and Wilson made no motion for new trial and are not parties to this error proceeding. Four errors were assigned in the trial court by the defendant Bates in his motion for new trial. The court overruled this motion and sentenced him to a term of one year and one day in the United States penitentiary at Atlanta, Ga., that he pay a fine of $250 and the cost of prosecution.

[1] Plaintiff in error now relies, in this court, upon the third assignment of error only, which assignment reads as follows:

"The defendant was surprised by the evidence of the witness Satterfield, in the testimony given by him upon his recall by the government."

It appears from the evidence introduced in the trial of this case that the defendant Bates resided at Knoxville, Tenn., about 80 miles from the distillery described in the indictment; that he was engaged in operating a butcher stall in the city market house; that his codefendant, A. M. Blackwell, was employed by him from time to time in connection with the operation of this meat stall; that on August 27, 1919, Bates gave to Blackwell at his butcher stall a large amount of money in paper currency; that Blackwell immediately purchased 1,200 pounds of "Dixie Crystal" granulated sugar, paying therefor $120 in bills, and directed that the sugar be consigned to F. L. Phillips at Tellico Plains, Tenn.; that the clerk in the store of C. D. Kenny & Co., gave Blackwell a receipted bill for this purchase; that shortly after this, during the months of August and September, Blackwell was frequently seen in the neighborhood where this still was operated; that he stayed for a week or two at the house of Hoyt Nichols, who was afterwards employed to haul this sugar from the depot at Tellico Plains to a point near the distillery; that early in September Bates left Knoxville in his automobile and drove into the mountains of Monroe county, in the vicinity of this still, where he spent the night with John Wilson, his codefendant; that on that night he visited the store of F. L. Phillips. The next day he went to the house of Bill Smith, who lived near this distillery, which was at a remote and sparsely settled section of the

Smoky Mountains near the North Carolina line; that he left Smith's house for Knoxville on the afternoon of September 4th, and was arrested before reaching Tellico Plains by a deputy United States marshal, for carrying concealed weapons in violation of a state law; that shortly before Bates was arrested the deputy marshal, accompanied by a deputy collector of internal revenue, located, seized, and destroyed an illicit distillery on Ball Play creek in Monroe county, Tenn.; that this still had been in recent operation; that the rock furnace in which the still boiler was set was warm when the officers found it, and there was an accumulation of ashes; that there was also from 600 to 800 gallons of still beer then in process of fermentation; that they then went to the house of Bill Smith, but he was not at home. They searched his house and found several kegs that had had some moonshine whisky in them; that in the woods near the distillery were found some kegs that also had contained moonshine whisky; that at the distillery itself were found four 100-pound empty bags, which had theretofore contained sugar. These bags were branded "Dixie Crystal, C. D. Kenny & Co., Knoxville, Tenn." About a mile from the distillery they found eight similar bags full of sugar. It also further appears from the evidence that after Bates had reached John Wilson's home on the night of September 3d that he and Wilson went to the store of F. L. Phillips; that Phillips spoke to some one who said his name was Bates, about this sugar that had been shipped in his name to Tellico Plains. Phillips said:

"I brought it up to see if he knowed something about it. I named the sugar, and said I didn't want anything like that to come in there. * * * When ı named the sugar, Mr. Bates, I believe, says to me, that the sugar cost him $120, and that is the conversation I had with Mr. Bates; and it is like I tell you, there were two men in the crowd."

It appears from the record that Satterfield was called as a witness on the part of the government and testified in effect that on August 27, 1919, he had seen the defendant Bates give to his codefendant Blackwell a considerable amount of money; that Blackwell put this money in his pocket and went directly from Bates to the store of C. D. Kenny & Co., and there bought 1,200 pounds of sugar, telling the clerk to ship the sugar to F. L. Phillips, Tellico Plains, Tenn.; that Blackwell then paid for the sugar, $120 in bills. He was then asked by the district attorney if he knew any other facts material to the litigation, to which he would like to testify, and answered, "That is all I can think of." The witness was then cross-examined by counsel for Bates, in reference only to the several matters about which he had already testified.

After the close of the evidence for the defense, Satterfield was recalled to the stand and further testified as follows:

"After Blackwell left C. D. Kenny & Co.'s store on the occasion of buying that $120 worth of sugar, he carried away with him a paper which had been given to him by Mr. Weaver. That paper was a receipted bill. When he got to the stall in the market house, he gave that paper to Mr. Bates. I saw him hand it to Mr. Bates."

This is the evidence of Satterfield, to which the third assignment of error in the motion for new trial relates, and is the error now relied

upon for the reversal of this judgment. In support of his motion for new trial Bates filed his own affidavit, in which, among other things, he states that he was acquainted with Satterfield, and had talked with him before the trial in regard to the evidence he would give against him on the trial of the case, and that the witness had told him then that he knew nothing about the matter, except that he had seen Bates give Blackwell some money, and that for this reason Bates was taken wholly by surprise by the testimony given by Satterfield upon recall.

Several other affidavits were exhibited to the court, in which the affiant stated that Satterfield was of bad character and that he was not entitled to full faith and credit upon oath in a court of justice. The plaintiff in error also filed in support of his motion for new trial the affidavits of Wm. Smith, J. E. Bates, and A. M. Blackwell, his codefendant. Blackwell's affidavit contained the statement that he did not go back to E. R. Bates' stall in the market house, where he had received the money from him, from the C. D. Kenny store, and that he did not see him again that day after he had purchased the sugar. The affidavit of J. C. Bates, father of this plaintiff in error, contains the statement that he was present when plaintiff in error gave the money to Blackwell; that plaintiff in error, immediately after paying the money to Blackwell, went out of the market house in company with two other men; that affiant stayed in the stall for at least two hours after Bates left and until his return; that he was in and out of the stall during the whole of that day, but that Blackwell did not return to the stall at any time that affiant was there.

It is claimed by the plaintiff in error that the statements contained in the affidavits relating to the character of Satterfield is newly discovered evidence, and that the evidence of J. C. Bates and A. M. Blackwell directly refutes and disproves the evidence given by Satterfield when he was recalled at the close of the evidence for the defense. In view of the other evidence in the case, the testimony of Satterfield in reference to the delivery by Blackwell of this receipted bill for sugar to Bates is a very strong circumstance in the chain of circumstances connecting Bates with the operation of this illicit still; but it is by no means determinative of this case. There is other evidence in this record sufficient to sustain the conviction of the plaintiff in error. However, when Satterfield was recalled to the stand, no objection was made on the part of the defendant, and, if there had been such objection, it was a matter wholly within the discretion of the court to permit its introduction at that time.

Nor was there any objection to the evidence, or any request, or any statement then made by Bates or his counsel, that he was taken by surprise and desired further time to secure other witnesses to disprove Satterfield's statement. Blackwell, his codefendant, whose affidavit is now offered to contradict Satterfield's testimony, was then present in court; his father, J. C. Bates, if not present in court, was in easy reach of process. If his father had been in charge of this stall in the meat market for two hours after he gave the money to Blackwell, the defendant knew it at the time of the trial, and, if he had asked the court for time to procure the testimony of J. C. Bates, undoubtedly it

would have been granted him. He also knew at that time that Blackwell had personal knowledge of all the facts in relation to this transaction. While he may have thought at that time that he ought not to force his codefendant upon the stand, yet that was a question solely for him to determine. If he decided to take the chances without Blackwell's evidence, and the evidence of J. C. Bates, in disproof of Satterfield's testimony, he cannot now be heard to complain of his own mistake of judgment, nor can he be permitted, after an adverse verdict, to take up the time of a court in a new trial, merely for the purpose of introducing further evidence, of which he then had knowledge, and which was in his power to produce at the trial, had he desired to do so. McLeod v. New Albany, 66 Fed. 378, 13 C. C. A. 525 (C. C. A. 7).

This applies equally to the evidence of Satterfield's reputation for truth and veracity. It does not appear from his affidavit that he did not know Satterfield's reputation in that regard just as well before, and at the time of, the trial, as when he made this motion for a new trial, or that he had used any diligence whatever in an effort to obtain such knowledge, or secure evidence in reference thereto. His diligence along these lines since the trial cannot be taken into consideration upon the hearing of this motion, except to show the fact that, if he had been diligent, in due time he might easily have obtained this information and proof. He knew that Satterfield had been called as a witness by the government, and he should have prepared to meet any phase of his testimony. Satterfield was not required to divulge to him the nature of the evidence he expected to give, and Bates had no right to rely upon his statement in that regard. Satterfield may have forgotten this part of the transaction when he was first upon the witness stand. It is also possible that he had forgotten it when Bates interviewed him in reference to what he knew about this case. The affidavit of William Smith can in no sense be considered newly discovered evidence. If his testimony was important to the defendant, he should have been produced at the trial.

The claim of counsel for plaintiff in error that the testimony of F. L. Phillips does not clearly show that the conversation he had was in fact with Bates cannot be sustained. Bates denies this conversation, but he admits that he was at the Phillips store, and that he did talk with him, and that he may have said to him that "I went down there to get fried chicken and whisky," but disputes that it was that night. It does not appear from the evidence in this case that Bates was there any other night, or that Phillips ever had any other conversation with him, except the one narrated in his testimony.

[2] A motion for a new trial is directed to the discretion of the trial court. Haws v. Mining Co., 160 U. S. 303, 16 Sup. Ct. 282, 40 L. Ed. 436; Van Stone v. Stillwell & B. M. Co., 142 U. S. 138, 12 Sup. Ct. 181, 35 L. Ed. 961. The verdict of the jury is fully sustained by evidence, and it is clear that the trial court has not abused its discretion in overruling the motion of plaintiff in error for a new trial either upon the ground that the defendant was taken by surprise by the evidence of Satterfield upon recall, or upon the ground of newly discovered evidence.

Judgment affirmed.