## WAGMAN v. UNITED STATES.*

(Circuit Court of Appeals, Sixth Circuit. December 10, 1920.)

No. 3460.

1. **Indictment and information** ⬅34(3)—**Erroneous designation of statute in indorsement not fatal defect.**

   The indorsement on an indictment is no part of the indictment; and that it erroneously designates the statute on which it is based is not a fatal defect, where the indictment charges an offense under the applicable statute.

2. **Statutes** ⬅118(6)—**Amendment to federal act making it an offense to transport liquor into prohibition state, held not invalid because subject not included in title; "other purposes."**

   The so-called Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), making it an offense to transport liquor into a prohibition state, is not invalid on the ground that its subject-matter is not included in the title of the act, which is "An act making appropriations for the service of the Post Office Department for the fiscal year ending June 30, 1918, and for other purposes," since "other purposes" includes every possible subject of legislation.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Other.]

3. **Intoxicating liquors** ⬅132—**Reed Amendment did not expire with appropriation act.**

   The Reed Amendment (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a), making it an offense to transport liquor into a prohibition state, did not cease to be effective with the expiration of the period covered by the appropriation act.

4. **Criminal law** ⬅372(2)—**Evidence of continuing traffic admissible in prosecution for illegal transportation.**

   On trial of defendant for illegal transportation of liquor into a prohibition state evidence of facts and circumstances tending to show that he was then engaged in a continuing traffic of the kind *held* competent as affecting the question of intent, although it tended to show guilt of other offenses.

5. **Criminal law** ⬅510—**Conviction may rest on testimony of accomplices alone.**

   Federal courts recognize no rule of law forbidding convictions on the testimony of accomplices alone if believed by the jury.

6. **Witnesses** ⬅361(2)—**Impeached witness may explain his conviction and assert innocence.**

   Where it was shown on cross-examination of a witness that he was then undergoing imprisonment for larceny, it was not error on re-direct to permit him to explain his conviction and to assert his innocence.

7. **Criminal law** ⬅1059(2)—**General exception to charge ineffective.**

   A general exception to the charge of the court as a whole is ineffective as the basis of an assignment of error to any particular part, or to the omission to charge on a point not requested.

8. **Criminal law** ⬅1153(4)—**Permitting leading questions discretionary.**

   The extent to which leading questions may be permitted is largely a matter of discretion in the trial court, which cannot be reviewed, in the absence of clear abuse thereof.

9. **Criminal law** ⬅1036(1)—**Rebuttal testimony cannot be first objected to on appeal.**

   A defendant cannot raise for the first time in the appellate court the objection that improper testimony was introduced in rebuttal.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 254 U. S. —, 41 Sup. Ct. 376, 65 L. Ed. —.   •

**10. Criminal law ⬤⇒711—Court, in discretion, may limit time for arguments.**
Limiting the time for argument to the jury *held* not an abuse of discretion.

In Error to the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Criminal prosecution by the United States against Max Wagman. Judgment of conviction, and defendant brings error. Affirmed.

W. E. Baubie, of Detroit, Mich. (Baubie & Baubie, of Detroit, Mich., on the brief), for plaintiff in error.

Fred L. Eaton, Asst. U. S. Atty., of Detroit, Mich. (John E. Kinnane, U. S. Atty., and Frank Murphy, Asst. U. S. Atty., both of Detroit, Mich., on the brief), for the United States.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error (whom we shall call defendant) was indicted on April 24, 1919, under the so-called "Reed Amendment," charged with having, on January 30, 1919, transported intoxicating liquor from the state of Ohio into the state of Michigan. This writ is to review a judgment of conviction thereunder. Numerous assignments of error are presented.

[1] 1. The indictment is indorsed "Violation of Reed Amendment to Diplomatic and Consular Service Act of March 3, 1917." The indictment is assailed as invalid for the reason that the Reed Amendment is not a part of the Diplomatic and Consular Service Act. It is, in fact, a part of section 5 of the Post Office Appropriation Act of the same date (39 Stat. c. 162, pp. 1058–1069 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 8739a]). The criticism is that "defendant was convicted under a so-called law which did not exist." The criticism is without merit. The indorsement is no part of the indictment, which sufficiently sets out the offense by stating the facts which bring it within the applicable law. But, even were the indorsement a part of the indictment, the mistaken reference to the appropriate act could not have misled or prejudiced defendant. It is too technical and unsubstantial to work a reversal of the judgment. U. S. Comp. Stat. 1916, § 1691; Judicial Code, § 269, as amended February 26, 1919 (40 Stat. 1181, c. 48 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 1246]); West v. United States (C. C. A. 6) 258 Fed. 413, 415, 416, 169 C. C. A. 429; Grandi v. United States (C. C. A. 6) 262 Fed. 123.

[2, 3] 2. The Reed Amendment is assailed as unconstitutional, for the reason that its subject-matter is not included within the title to the Post Office Appropriation Act of March 3, 1917 (39 Stat. 1058) which is "an act making appropriations for the service of the Post Office Department for the fiscal year ending June 30, 1918, and for other purposes." There is no force in this objection. The federal Constitution does not require that the object or purposes of a congressional act be indicated by the title, which accordingly "cannot be used to extend or restrain any positive provisions contained in the body of the act." Hadden v. Collector, 5 Wall. 107, 110, 18 L. Ed. 518; Goodlett v. Louis-

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ville. R. R., 122 U. S. 391, 408, 409, 7 Sup. Ct. 1254, 30 L. Ed. 1230. Moreover, the words "for other purposes," found in the title of the act in question, are "considered as covering every possible subject of legislation." Hadden v. Collector, supra, 5 Wall. at page 111, 18 L. Ed. 518. Within common knowledge, it is not unusual congressional practice to include in appropriation bills riders whose subject-matter has no relation to the appropriation features of the act. The Hadden Case, supra, cites two conspicuous instances of such established practice. Nor is there anything in the point that the so-called Reed Amendment is invalid, in that its title does not indicate the subject of the amendment by reference to the act or title of the act to be amended. The Reed Amendment is not an amendment of an existing statute, but of a pending bill. The suggestion that the provision of the Reed Amendment expired with the termination of the period covered by the appropriation act in question is too unsubstantial to justify discussion. It has no dependence whatever upon the post office service. It has been held constitutional, and a conviction affirmed, in a case where the liquor was carried on the defendant's person. United States v. Hill, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed. 337.

3. Consideration of the remaining assignments requires a reference to testimony. The transportation in question is alleged to have been made on the early morning of January 30, 1919; 300 quarts of liquor being carried in a Chandler car, owned by plaintiff in error, and 300 quarts in a King car, which was supposed to belong to one Somers— the Chandler car being driven by Gill, and the King car by Dotson, both of whom were jointly indicted with Wagman, who alone was tried. Gill testified that the Chandler car was loaded at Wagman's place of business in Toledo, with the assistance of both Wagman and Somers. Dotson and Gill testified in effect that Wagman rode ahead of the liquor cars in a taxicab, and that at Wyandotte, Mich., they were told by him (he is said to have gone on ahead from there) to await instructions before they should go on through. Gill says that in the taxicab (driven by Weed) were also Somers and another person, said to be a friend of Wagman. The latter was arrested in Detroit on the morning of January 30th. There was testimony of the finding on his person of official identification cards both for the Chandler car (in his own name) and for a King car in the name of "Dave Samsht," as printed in the record here; also two liquor bills, one indicating the purchase of $1,925 worth of liquor on December 31, 1918, from one Belmont, and the other for $2,475, for liquor purporting to have been purchased from the Webber firm in Toledo, the purchaser's name, as recollected by the witness, being given as "Sam Immer." Webber testified to the sale to Wagman in January, 1919, of liquors which, on the basis of his testimony, would amount to more than 590 quarts. He says: "The name of Sam Ember was given in this sale. Wagman bought the whisky." One Goldstein, a liquor dealer at Detroit, also testified to the sale to Wagman of whisky "last January and February in considerable quantities" (this naturally means 1919). Goldstein's books were said to have been destroyed "since the state went dry," which was

May 1, 1918. There was also testimony by Gill that he had made for Wagman a similar trip to Detroit on January 29, 1919.

There was also testimony of a settlement by Wagman with the government (presumably after his arrest in this case) by the payment of $831 "due as wholesale liquor dealer, and a violator of section 601 of the act of 1918, for failure to pay taxes on" a certain amount of liquor, together with penalties on that account; the tax as wholesale liquor dealer "on January 1, 1919, to and including June 30, 1919," with delinquency penalty on that account. There was also testimony that Wagman ordered, for use in a Dodge truck owned by him in Toledo, a copper tank of about 30 gallons capacity; the tank being delivered on January 14, 1919. Wagman admitted on the trial that he went from Toledo to Detroit on the morning in question (on what he asserted was a legitimate business trip) in a taxicab hired by him and driven by Weed, and for the asserted reason that his Chandler car was out of commission. He also admitted that the Chandler identification card was his. He denied all knowledge of the King card, or of that car, or of the copper tank, or that he had anything to do with or knew of the alleged transportation of liquor in question here, or that he was at any time engaged in bringing liquor into Michigan, or dealing in liquors, or that he had liquor in his Toledo store; denied that he had ever gone under the name of "Ember"; denied that he knew Dotson, or that he bought in January the liquor claimed to have been sold him by Webber. He neither admitted nor denied making the Belmont purchase, stating, however, that he bought in January, 1919, 45 cases (540 quarts) from Belmont "for our own use," in anticipation of Ohio's becoming dry. He denied that he had authorized his attorney to make the settlement with the government before mentioned. He made no reference to Somers or the alleged fourth occupant of the taxicab. Neither such fourth occupant nor Weed nor Somers testified in the case.[1] There was thus abundant testimony warranting the submission of the case to the jury.

[4] 4. It was not error to receive evidence of defendant's trip to Detroit on January 29, 1919, the settlement with the government, and the purchase of the copper tank. These transactions, so close in point of time to the act here charged, and open to inference that they were the outgrowth of a continuing clandestine liquor traffic, were competent evidence, at least by way of showing the intent of defendant's taxicab trip to Detroit, including knowledge or ignorance of the fact that his own car, laden with whisky, was following him. Being thus competent, it was not made incompetent because of a tendency to show guilt of another offense. Tucker v. United States (C. C. A. 6) 224 Fed. 833, 840, 140 C. C. A. 279.

[5] 5. Plaintiff in error urges that his conviction was had largely upon the testimony of Dotson and Gill, and complains that the trial court did not, upon its own motion, instruct the jury that the testimony of these witnesses should be carefully scrutinized, and believed only when corroborated by other testimony in the case. The failure to so instruct would not be reversible error, even had it been excepted to, as

[1] It seems likely that Weed is the person jointly indicted as "Reed."

it was not. While it would have been better practice to caution the jury against relying too greatly upon the testimony of these accomplices, and to require corroborating testimony before giving it credence, the federal courts recognize no rule of law forbidding convictions on the testimony of accomplices alone, if believed by the jury. Holmgren v. United States, 217 U. S. 509 523, 524, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778; Caminetti v. United States, 242 U. S. 470, 495, 37 Sup. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Ray v. United States (C. C. A. 6) 265 Fed. 257, 258.

[6] 6. Dotson testified, on cross-examination, in answer to questions evidently intended to discredit him, that he was then an inmate of a prison upon conviction of larceny. On redirect examination he was allowed to explain his conviction and to assert his innocence of guilt. There was no error in this, nor in allowing him to state in that connection that he was "innocently implicated" in the offense charged here, in that he was driving the car for Wagman under instructions from his own employer, and that he "did not get any pay for it."

[7] 7. The Reed Amendment excepts from its prohibition liquors intended for "scientific, sacramental, medicinal and mechanical purposes." The indictment in terms negatived the exception. There was no express proof in support of the negative. The charge did not mention the exception, and made defendant's guilt or innocence turn upon whether he caused the whisky to be brought from Ohio into Michigan, in the two certain automobiles which had been made the subject of testimony. This action did not involve reversible error. As the record stands, it is unnecessary to determine whether the government had the burden of proving this negative.[2] Defendant neither moved for directed verdict, nor did he request an instruction upon the subject of the excepted uses, nor was there any exception taken to the charge on this subject. The "general exception to the whole charge of the court" was ineffective. Anthony v. Louisville R. R. Co., 132 U. S. 172, 10 Sup. Ct. 53, 33 L. Ed. 301. The defendant is thus not entitled to complain of the charge or of its omissions in this respect. Nor is a case presented for the exercise of indulgence in overlooking lack of exception to prevent miscarriage of justice. The circumstances as exhibited by the testimony were such as expressly to repel any implication that the liquor was intended for scientific, mechanical, medicinal, or sacramental purposes. The jury could not, without perverseness, have found such excepted use intended.

8. Gill testified that while he and Dotson were in a garage at Wyandotte, under instructions from Wagman to wait there until he telephoned them to follow, the proprietor of the garage, who he afterwards learned by the newspapers was named Gianola, told him it was "unnecessary to wait for Wagman; that the road was clear; that we should drive through by the River Rouge bridge." They were arrested at that

---

[2] See upon this question what is said by this court in Breitmayer v. United States, 249 Fed. 929, 934, 162 C. C. A. 127, and Stetson v. United States, 257 Fed. 689, 692, 168 C. C. A. 639. In United States v. Simpson (D. C.) 257 Fed. 860, it has been held that the excepted uses are matter of defense, and need not be negatived by the government.

bridge by the state constabulary. Gill further testified that he and defendant had the day before been at this same garage, that Gianola and defendant were then "kidding amongst themselves," and that the witness took Gianola's order, "because I thought he had something to do with it." Defendant's brief states that "it was then, and now is, a matter of common knowledge that this man, Sam Gianola, a notorious character, died before the trial in this cause, making a contradiction of the dangerous hearsay impossible." Our attention is not called to anything in the record to that effect, and defendant's testimony makes no mention of Gianola. We are unable to say that Gill had no reason to think that Gianola "had something to do with it"; at any rate, the testimony was given in the course of a narrative of the transaction, and as explaining how it happened that the cars were overhauled and captured at the River Rouge. The court was not requested to caution the jury with respect to this item of testimony. We are not satisfied that reversible error was committed.

[8] 9. Defendant complains of the frequent admission of leading questions on the part of the government's counsel. The extent to which leading questions may be permitted is largely matter of discretion in the trial court, which cannot be reviewed in the absence of clear abuse thereof. Upon a careful consideration of the entire record, we are unable to find such abuse.

[9] 10. Complaint is made that the testimony of Goldstein, as well as of a witness to the making of the copper tank, was introduced after defendant had rested his case, and that the testimony of neither of those witnesses was proper rebuttal. On the trial no objection was made to the testimony on that score. Following defendant's testimony (the record contains no announcement that his case was rested), the government introduced two new witnesses besides recalling one of its own for further redirect, and recalling defendant for recross-examination. Defendant then introduced two witnesses as to his reputation. The government then presented five witnesses (on other matters), after which defendant recalled one of his witnesses and the government did the same, all this without objection as to order of proof. That subject was, generally speaking, within the judicial discretion of the trial court, always subject, of course, to reasonable limitations to prevent prejudice, by way of surprise or otherwise. We must presume that had defendant objected to the testimony his rights would not have been overridden. As the case stood, the court was not called upon to exercise his discretion, and there could thus be no abuse in that respect. Defendant is not entitled to raise here, for the first time, the objection that the testimony was not proper rebuttal. Bates v. United States, 269 Fed. 563, decided this day by this court.

[10] 11. The court limited the argument to the jury to fifteen minutes on a side. Defendant complains that this time was insufficient; also that, when counsel so stated, he was told, "You have been too long putting it [the case] in." While it may well be that a somewhat longer allowance would have been better, we are not convinced that defendant was prejudiced by this limitation, and thus that reversible error was committed. The court has undoubted right to limit argument with-

in the bounds of a reasonable discretion. There is much to be said in favor of the court's action. That the whisky was illegally transported from Toledo to Detroit was not reasonably open to question; nor was the fact that defendant preceded the liquor-laden cars by a comparatively short distance.. The case necessarily turned upon the simple question whether, under all the evidence in the case, it was proven beyond a reasonable doubt that defendant hired Gill and Dotson and furnished the two automobiles to haul the whisky, going ahead to keep the way clear. A short limitation of time was clearly justifiable. To draw the line between 15 minutes and say 30 minutes is impossible upon this record. In fact, as appears by the record, the government's counsel used 15 minutes and defendant's counsel 22 minutes. We are unable to say that the court abused its discretion.

We have not found it necessary to discuss all of the criticisms made upon the proceedings below. We have, however, considered them all, and have discussed all that seem fairly to call for such action.

Finding no reversible error in the record, the judgment of the District Court is affirmed.