## LEMBECK v. UNITED STATES SHIPPING BOARD EMERGENCY FLEET CORPORATION.

(Circuit Court of Appeals, Second Circuit. June 13, 1925.)

No. 355.

1. **Seamen ⊗⇒29(5)—Evidence held not to sustain burden on injured seaman to prove that he was in employ of Emergency Fleet Corporation.**

Evidence *held* insufficient to sustain burden on injured seaman to prove he was in employ of United States Shipping Board Emergency Fleet Corporation, and insufficient to go to jury.

2. **Shipping ⊗⇒3½, New, vol. 8A Key-No. Series —Shipping Board held authorized to recognize United States shipping lines and take over operation of its vessels.**

Under Merchant Marine Act 1920, §§ 7, 12 (Comp. St. Ann. Supp. 1923, §§ 8146¼bbb, 8146¼eee), United States Shipping Board was authorized to reorganize United States shipping lines and take over operation of its vessels, even if Emergency Fleet Corporation had previously operated such vessels.

3. **Evidence ⊗⇒341—Certified copies of resolutions and minutes of United States Shipping Board held competent evidence.**

Copies of resolutions and minutes of United States Shipping Board, certified by its secretary under its seal, were competent evidence, under Shipping Act 1916, § 3 (Comp. St. § 8146b), and Rev. St. § 882 (Comp. St. § 1494), was not applicable.

4. **Trial ⊗⇒59(1)—Permitting alleged employer to put in evidence on issue of employment, without covering other issue, held proper and commendable.**

In seaman's action for injuries, permitting alleged employer to put in all its evidence on issue of employment, without covering other issue, *held* proper and commendable.

In Error to the District Court of the United States for the Eastern District of New York.

Action by Arnold Lembeck against the United States Shipping Board Emergency Fleet Corporation for personal injuries. Judgment for defendant, and plaintiff brings error. Affirmed.

Lembeck, the plaintiff, sued the defendant for injuries suffered while in its employ as a member of the crew of the steamer President Fillmore. He signed articles as one of the complement of the engine room, and while engaged as an oiler and engineer lost his eye by an accident which he alleged to be due to the defective condition of the boiler and fire box, and to the poor quality of the coal used. At the close of the plaintiff's proof the trial judge allowed the defendant to put in evidence certain certified copies of resolutions and minutes of the United States Shipping Board, and upon these and the plaintiff's proof dismissed the complaint. The sole question is whether the plaintiff has proved that he was in the employment of the defendant:

Besides the fact that he signed the ship's articles, the plaintiff showed as follows: A pay roll, signed by him, of the "United States Lines"; a bill for coal delivered to the ship and charged against "United States Lines"; a voucher made out by the seller of the coal on a blank which was headed "United States Shipping Board Emergency Fleet Corporation"; an audit and approval by some unidentified person of the purchase of the coal on a blank of the "United States Lines"; a check of the defendant to the order of Hall, "paymaster," for the payment of wages on the voyage in question.

The defendant's proof consisted, as has been said, of resolutions and minutes of the Shipping Board, certified by its secretary and under its seal. Of these only one is important. This was dated October 16, 1923, before the voyage on which the plaintiff was serving when he was hurt. It purported to be an extract from the proceedings of the board, and stated that on motion made and carried the following "procedure" was approved "with respect to the reorganization of the United States Lines":

(a) One Love was appointed managing director of the "Lines," who was to resign as general manager of the Fleet Corporation.

(b) One Rossbottom was appointed as "general manager in charge of operation" under Love.

(c) A subcommittee, consisting of three of the board, was "to have supervision of the United States Lines; the relations of this subcommittee to the affairs of the United States Lines to be essentially those of a committee of the board of directors, to whom the board has delegated immediate supervision."

(d) "The relations of the United States Lines to the Emergency Fleet Corporation to be essentially the same as though it were a subsidiary corporation."

(e) The subcommittee and the officials of the Fleet Corporation were to communicate any instructions to the managing director, who was "to transmit all orders to the Lines."

(f) The operating department of the Lines was to have "immediate jurisdiction" of the maintenance of the ships and all other activities relating to the operation of the vessels.

(g) Is unimportant.

(h) "The treasurer of the Emergency Fleet Corporation will be the treasurer of the United States Lines, and the accounts will be kept under instructions from the general controller."

Arthur Lavenburg, of New York City, for plaintiff in error.

Ralph C. Greene, of Brooklyn, N. Y. (Joseph H. Dreyer, of counsel), for defendant in error.

Before ROGERS, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. [1] We think that the plaintiff's proof comes to nothing more than that the defendant paid the crew. The pay roll and the documents covering the coal did not emanate from the defendant, nor were they sent to it, so far as appears. Taken alone, the payment of the crew might be enough to establish prima facie that the defendant operated the ship, though that question we do not find it necessary to decide. It becomes of no moment in the light of the resolution of the board, which shows the contrary. While the board vested "supervision" of all ships of the "Lines" in its subcommittee, we read the resolution as meaning that it retained for itself the function of a board of directors; that is, full management under its deputies.

We should have no question of the ensuing legal relations except for sections (d) and (e), because the mere disbursing of the ship was certainly consistent with the chief purpose originally disclosed. To say that the "Lines" should have the relations of a "subsidiary corporation" to the defendant means nothing. There are several such relations conceivable, the most familiar, perhaps, being that the "parent" merely owns a controlling interest in the "subsidiary's" shares. In some cases the courts have declined to recognize their distinct personality for juridical purposes, as, for example, when the officers are the same and the business is conducted under the detailed direction of the "parent." Ordinarily, however, the two are treated as separate persons, and we should feel pretty sure that this was the purpose here, were it not for section (e). That, again, means very little, except that it shows that the board expected that the defendant might issue direct instructions to Love, the managing director. If so, the "relations" of "parent" and "subsidiary" may in fact have amounted to a merger of any separate identity which the resolution tried to create; the defendant may have directed the operation of the ships. We

can only say that the matter has been left so vague that the plaintiff, who has the burden of proof, has failed to carry it. On its face the whole resolution seems to us to put operation in the board. The sections discussed apparently leave the defendant a kind of deus ex machina, whose intervention conventionally is sporadic; at least, we cannot ascribe to it the attribute of immanence. Plainly the question was not one for the jury, and in our judgment the proof was defective.

[2] Under section 11 of the Shipping Act of 1916 (Comp. St. § 8146f) the board was authorized to create the defendant, for the operation of merchant vessels in the commerce of the United States. Whether under this law it might itself operate such vessels we need not inquire, for under section 7 of the Merchant Marine Act of 1920 (Comp. St. Ann. Supp. 1923, § 8146¼bbb), it was given power to sell or to charter such vessels as it might acquire or to operate the same until sold. The same power is recognized by section 12 of the Act (Comp. St. Ann. Supp. 1923, § 8146¼eee). Thus the board was within its powers in passing the resolution of October 16th, and in taking over the operation of the vessel in question, even if the defendant had operated it in the past, as to which we are not informed. The defendant was not the employer, and not responsible for the damages which arose under plaintiff's contract.

[3] The remaining question is of the competency of the certified copies, to which the plaintiff objected upon their introduction. Two questions arise: First, whether secondary evidence was proper at all; and, second, whether, if so, it was competent. The plaintiff argues that the board is not an executive department of the United States, and that Revised Statutes, § 822 (Comp. St. § 1494) does not therefore control. We do not find it necessary to hold the contrary. It was early established by the Supreme Court that "on general principles," and regardless of statutes, copies of public documents, properly certified by their custodian, were competent evidence without the production of the originals. U. S. v. Percheman, 7 Pet. 51, 85, 8 L. Ed. 604; U. S. v. Wiggins, 14 Pet. 334, 346, 347, 10 L. Ed. 481; Meehan v. Forsyth, 24 How. 175, 176, 16 L. Ed. 730; Breitmayer v. U. S., 249 F. 929, 932, 933, 162 C. C. A. 127 (C. C. A. 6); Wigmore, Sec. 1677. The rule is quite independent of any statute, and is not affected by section 882. Our decision in Cohn v. U. S., 258

F. 355, 169 C. C. A. 371, does not touch the case.

The question of the proper authentication of the copies is covered by section 3 of the Shipping Act of 1916 (Comp. St. § 8146b), which directs us to take judicial notice of the seal of the board. Thus the evidence was competent in both aspects.

[4] The practice of allowing the defendant to put in all its proof on the issue of employment, without covering the other issue, was proper and commendable. The whole proof then showed that the plaintiff could not recover. Whether it might have been more regular to direct a verdict we need not inquire.

Judgment affirmed.