**Commonwealth v. Conner**

*Donald G. Oyler*, Special District Attorney, for Commonwealth.

*Murray B. Frazee, Jr.* and *John J. Krafsig, Jr.*, for defendant.

MacPHAIL, P. J., July 1, 1971.—This case has a long history in this court. Defendant was arrested and indicted on charges of arson and burning with intent to defraud insurer. The charges arose out of a fire at the unoccupied residential dwelling owned by defendant and his wife in Franklin Township, Adams County, Pa. The fire occurred October 11, 1966.

At the first trial in 1967, the court declared a mistrial by reason of a prejudicial statement made by a witness for the prosecution during the presentation of the Commonwealth's case. The second trial

occurred in 1967, resulting in a jury verdict of guilty on both counts. Defendant filed motions for new trial and in arrest of judgment following that verdict. This court sustained the motion for new trial on the grounds that evidence was erroneously admitted into the trial and that a prejudicial statement had been made by the district attorney during the presentation of his argument to the jury: Commonwealth v. Conner, 10 Adams Leg. J. 193 (1969). The case was retried following that decision and, as a result of the third trial, defendant was found guilty by a jury of arson, but acquitted of burning with intent to defraud insurer. Defendant has now filed a motion for a new trial and in arrest of judgment testing the validity of that jury's verdict. Those motions are now before us for disposition.

To say the least, the third trial had some unusual circumstances. Defendant's retained counsel at the two previous trials withdrew prior to the trial of the case. At defendant's request, the court appointed counsel for defendant, but for reasons which are spread on the record on the day of trial, defendant decided to represent himself but wanted his court-appointed counsel to sit with him and advise him. This request was granted. The trial proceeded on that basis the first day. At the beginning of the second day of trial, John Krafsig, Jr., Esq., appeared before the court and at defendant's request "assisted" defendant. This condition became intolerable and at the court's suggestion, Mr. Krafsig was permitted to actively represent defendant, rather than "assist" him. Notwithstanding the fact that defendant was represented by Mr. Krafsig, defendant requested that his court-appointed counsel also sit with him and this request was also granted. Mr. Krafsig found it inconvenient to return for the conclusion of the trial on the third

day and, for this reason, court was held late on the second day to permit the presentation of defendant's case and the presentation of defendant's summation, all of which was ably done by Mr. Krafsig. The court schedule would not permit a continuance of the case until Monday and, therefore, the case proceeded on Saturday with the Commonwealth's summation and the charge of the court. On that day, defendant's court-appointed counsel continued to advise the defendant.

Following the jury's verdicts, defendant's court-appointed counsel filed timely motions for a new trial and in arrest of judgment and reserved the right to file additional reasons in support of the motions. From that point on, defendant has acted in his own behalf in filing additional reasons in support of the motions, in preparation of his brief and in oral argument. He has listed a total of 34 reasons why the motion should be granted and has extensively briefed 27 of those reasons.

Even though adequate ground work has not been laid to argue many of the points raised by defendant, because defendant either failed to object at the time evidence was admitted or failed to take special exceptions to the court's charge, in view of defendant's problems with counsel, all of which were of his *own* making, we will rule upon each of the reasons as though all technical conditions precedent had been met.

Factually, as with most arson cases, the Commonwealth's case was based upon circumstantial evidence and this was carefully pointed out to the jurors in the court's charge. The Commonwealth's evidence that the crime of arson was committed consisted of testimony of defendant's prior threat to burn his house because of domestic difficulties with his wife; the

presence of defendant at the scene of the fire and a statement made by him at that time, to wit, "Let the son of a bitch burn"; testimony that at the time of the fire the house was unoccupied but under levy by the Sheriff of Adams County on a writ of execution at the instance of a creditor; the expert testimony of a member of the Pennsylvania State Police attached to the State Fire Marshal's office that the fire was incendiary in origin, which testimony was corroborated by the testimony of a special agent in the arson department of the American Insurance Association; and the testimony of local fire officials who testified that the electricity in the house was turned off, that there were no natural weather conditions which would or could have caused the fire and that there was no evidence of trash or brush fires in the area at the time of this fire. Undoubtedly, the extensive testimony of Lieutenant Regan from the State Fire Marshal's office was critical to the Commonwealth's burden to prove that the fire was of incendiary origin: Commonwealth v. Leslie, 424 Pa. 331 (1967). This officer was intensively and extensively cross-examined. His testimony, together with the other elements in the case previously mentioned, was certainly sufficient to meet the Commonwealth's burden in this respect. The weight of that testimony was properly submitted to the jury.

The defendant, through the production of witnesses, submitted alibi evidence. The jury, again, was properly instructed that not only did the Commonwealth have to prove that the crime of arson was committed, but also that defendant was the culpable party. The jury obviously chose to believe those witnesses who placed defendant at the scene of the fire rather than in some place quite remote from the fire. This is a proper jury function and there is no reason to disturb their findings in this respect.

In considering the motion in arrest of judgment, the only issue is whether or not the evidence in the case is sufficient to sustain the verdict, notwithstanding the rulings at trial on the admissibility of evidence. Commonwealth v. Tabb, 417 Pa. 13 (1965). We have no trouble here in denying the motion in arrest of judgment on the basis of all of the evidence submitted in the case. For the same reason, we cannot find that the verdict was contrary to the evidence.

While only a few of defendant's other reasons for a new trial merit serious consideration and discussion, we will, nevertheless, comment briefly as follows, taking up his reasons for a new trial, seriatim:

No. 5. This point raising the question of the appointment of counsel and the incompetency of counsel, if valid, would be grounds for PCHA relief, but is not a reason upon which the court can grant relief on defendant's motions presently before the court.

No. 6. Defendant complains that it was error for the court to admit 11 photographs into the evidence because the result was to inflame the minds of the jurors. The admission of the photographs in this case could not in any way be prejudicial to defendant, since they dealt only with the conditions found at the house by the expert witnesses. Such photographs were absolutely vital to the Commonwealth's case where their evidence depended upon circumstantial evidence and the admission of such photographs was not error.

Nos. 7, 9, 24 and 31. All of these reasons raise questions concerning the sufficiency of the evidence in general. We have already ruled that the evidence was sufficient to support the verdict and further discussion in this respect is unnecessary.

No. 8. This objection goes to the latitude given to the district attorney in questioning the witness,

Kramer. In particular, defendant claims that while the court would not permit this witness to give an opinion, since he was held to be incompetent to do so, in fact, the witness gave an opinion implied from the testimony which was elicited in order to determine whether or not he was a competent witness. It should be quite obvious that before the court could rule that the witness was competent or incompetent to render an opinion, the Commonwealth would have every opportunity to present the factual knowledge of the witness in order to make him a qualified witness. In any event, the witness gave no opinion, and we can see nothing prejudicial to defendant in the testimony given by this witness.

Nos. 10, 11, 14 and 15. These reasons raise the question of the validity of opinions rendered by expert witnesses. The court had to rule in the first instance that each witness had sufficient facts upon which to give an opinion, but once the opinion was ruled admissible, the weight to be given to that opinion thereafter was a jury issue. We were satisfied at trial, and we are satisfied now, that each witness who gave an opinion concerning the origin of this fire had sufficient knowledge and competency to give that opinion.

Nos. 12, 13, 19 and 20. These reasons raise the question of prior inconsistent statements made by certain witnesses called by the Commonwealth. The jury was specifically instructed that such prior inconsistent statements, if made, were to be considered by the jury in determining both the credibility of the witness and the weight to be given to that witness' testimony.

No. 16. This reason states that a witness should not have been permitted to testify because his name did not appear on the indictment. While there seems

to be some misguided opinion that this is the law, we are aware of no statute and no case which so holds. The only requirement, of course, is that before a witness can appear before the grand jury, his name must appear on the indictment: Commonwealth v. Brownmiller, 137 Pa. Superior Ct. 261 (1939).

No. 17. Defendant makes the serious charge that the attorney for the Commonwealth (who was specially appointed because the district attorney had disqualified himself) knowingly permitted the introduction of perjured testimony in this case. However, defendant's basis for such an allegation is that an affidavit was filed by defendant's wife at the conclusion of the second trial of this matter as a basis for granting a new trial. That affidavit stated that the witness whose testimony defendant now claims was perjured was not telling the truth at the second trial. Certainly, this is no more than "oath against oath" and is hardly grounds for such a serious charge against the Commonwealth.

No. 10. This reason states that the witness Noll identified defendant from a picture. This is not true. The record will show that the witness used a photograph of the premises to indicate where both he and defendant were standing at the time of the fire.

No. 21. Defendant complains that evidence was introduced concerning the alleged solicitation by defendant to commit another crime. The testimony in question concerns a discussion between defendant and his brother-in-law in January or February of 1966 just a few months before the fire in question. The conversation included a statement allegedly made by defendant to his brother-in-law that he, defendant, knew that paint thinner could be used to burn a house and that paint thinner could not be discovered as an accelerant after the fire. An essential element which

was missing in the Commonwealth's case was the ascertainment of the presence of an accelerant in connection with the fire. Neither expert could find any trace of an accelerant. The testimony by defendant's brother-in-law, therefore, was critical and admissible for that purpose.

No. 22. Defendant complains that the witness Parr's testimony about threats to burn the house was vague and not specified as to time and place. While the lack of particularity goes to the weight to be given to that testimony, it certainly does not affect its admissibility, and in view of the fact that the incident in question had occurred several years before, it is quite understandable that a witness could not be precise.

Nos. 23 and 26. Defendant objects to the control exercised by the court in limiting or permitting cross-examination of witnesses. There is no error in this regard, such matters being within the discretion of the court.

No. 25. Defendant alleges that there was a request for a continuance to February 16, 1970, for the purpose of concluding the trial and cites certain pages in the record to support his contention. There is nothing on the record regarding a discussion of a continuance to February 16, 1970. There is no indication by Mr. Krafsig that he would have been, or could have been, available on February 16, 1970. Trials are not, and cannot be, conducted at the convenience of counsel. There are already enough problems in court schedules. Once a lawyer has attached himself to a case and the trial has commenced, thereafter it is his obligation and duty, both to the court and his client, to stay with the case until it is completed.

No. 27. Defendant alleges that it was unfair for the attorney for the Commonwealth to argue that

defendant did not subpoena his wife as a witness. It is true that defendant did make an objection in this regard, however, we have an "absent witness" rule which the attorney for the Commonwealth could certainly argue as it applied to this case: Commonwealth v. Weber, 167 Pa. 153 (1895). He had the right to do so, he did so, and there would be no reason on or off the record why he could not do so.

No. 28. Defendant alleges that "cautionary" instructions were not given to the jury in accord with Commonwealth v. Kloiber, 378 Pa. 412 (1954), and Commonwealth v. Wilkerson, 204 Pa. Superior Ct. 213 (1964), on the matter of the identification of defendant. While it is true that the court in the present case did not specifically say to the jurors that the evidence of the two witnesses who testified that they saw defendant at the scene had to be received with caution, the court did review all of the factors of those witnesses' testimony which adversely affected the credibility of that testimony and, therefore, in effect, cautionary instructions *were* given. Furthermore, we feel from a review of the testimony of both witnesses that the necessary conditions set forth in Commonwealth v. Kloiber, supra, were present in this case, thus eliminating the need for cautionary instructions in any event.

No. 29. In this exception, defendant alleges that it was prejudicial for us to mention in our charge the age of the witness, Earl Rexroth, when his age did not appear in the record. The record clearly shows that the witness was asked his age and, therefore, it was proper for the court to refer to that age. Furthermore, such comment by the court would be helpful to defendant rather than prejudicial to him.

No. 30. Defendant complains that the court referred to the absent witness, Rondinello, in its

charge after instructing the attorney for the Common-wealth not to mention the fact that that witness was missing. What the court said in its charge was that the jury was to draw no inference *unfavorable to defendant* by reason of the fact that the witness was not called by defendant. Had such instruction not been given, the jury could well have drawn an inference adverse to defendant.

No. 32. Defendant complains that the court did not charge properly on the matter of defendant's alibi. A review of that portion of the court's charge relating to alibi evidence discloses that it complied, if not precisely, at least substantially, with Commonwealth v. Bonomo, 396 Pa. 222 (1959).

No. 33. During the jury's deliberations, they requested information concerning the testimony of Earl Rexroth, a witness for the Commonwealth. Specifically, they asked whether the witness testified how far he was from defendant when he allegedly saw defendant at the scene of the fire *and* where he, the witness, was standing when he observed defendant. Since defendant originally testified on both of these matters by reference to photographs, rather than giving distances in feet, we felt it necessary to have his entire testimony re-read except those portions which were clearly irrelevant to the jury's questions. Significantly,it was the attorney for the Common-wealth, not defendant, who objected to the re-reading of the witness' testimony. It was the court's opinion then, and it is now, that the only manner in which the jury could get an intelligent answer to its ques-tions was by a re-reading of the witness' testimony which, in its entirety, was very short indeed.

No. 34. By far the most important reason advanced by defendant for the award of a new trial is his objection to the court's charge to the jury after

the jury had been deliberating for more than five hours and had reported that it could not reach a verdict. The colloquy between the foreman of the jury and the court appears in the record as follows:

"The Court: Members of the Jury, you have submitted a question to the Court which reads as follows:

" 'Deadlocked on arson count. Should we try for a verdict on burning to defraud insurer?'

"In view of the fact that one of the elements of the crime of burning to defraud an insurer involves an incendiary fire, that is setting a fire by someone, you could not reach a verdict on burning to defraud an insurer if you can't reach one on arson because the same element is there. I would like to say that as you probably surmised from the testimony in the case, this is the third trial of this particular cause, and every time we try the case the witnesses have to come here and, of course, both the defendant and the Commonwealth have an interest in the outcome of the case. *And we would not under any circumstances ask any of you to vote against your conscience,* (emphasis ours) but we would ask whether or not you feel this is absolutely hopelessly deadlocked or whether or not you could consider the view points of one another a little bit longer in an effort to reach a verdict. If you think it's hopeless, so be it, but if you think there is a possibility that you may be able to reach a verdict within a reasonable time the Court would like to urge you to do so. Mr. Foreman, how do you size up the situation?

"FOREMAN: There was one question that was asked just before we came out, and this was regarding testimony given in the trial. We all seem to be rather vague as to the exact wording of the thing.

"THE COURT: All right.

"FOREMAN: Would it be possible to have this small

portion of the trial read back to us. We have a specific question.

"THE COURT: All right, can you draft that question for me? All right, supposing you retire to the Jury Room to draft the question and come back in when you're ready. We'll wait here for you.

"(Jury retired to the Jury Room.)"

While the court's comments to the jury do not constitute an "Allen Charge" (See Allen v. U. S. 164 U. S. 492 (1896), such comments do raise the question of whether the jury was unduly "pressured" into returning a verdict. In Commonwealth v. Spencer, 216 Pa. Superior Ct. 169 (1970), the Superior Court reviewed the "Allen Charge" and laid down certain modifications which were necessary before the Allen Charge could be used by trial courts in Pennsylvania. We quote a significant statement from that opinion (at page 174): "While unanimity is to be desired, if at all possible, the jury should be told that they need not reach accord, if they cannot do so conscientiously." Using that test and applying it to the portion of the court's charge to which defendant objects and also taking into consideration the significant fact that the jury reached its decision *after* having the testimony of the witness, Rexroth, re-read, we cannot find that the jurors brought in a verdict against their conscience. Furthermore, each juror was polled at the request of the court and each gave an unequivocal verdict in firm tones. It might also be added that from the testimony brought out in cross-examination by defendant himself, it was already obvious to the jury that several trials had preceded this one.

After considering all of the reasons advanced by defendant for the granting of a new trial and for a motion in arrest of judgment, we find that none are sufficient to justify the granting of those motions.

### ORDER OF COURT

And now, July 1, 1971, the motions for a new trial and in arrest of judgment are denied. Defendant is ordered to appear for sentence at the call of the attorney for the Commonwealth.